```
UNITED STATES EASTERN DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
AGAMEDE LIMITED, et al.,

                              Plaintiffs,            MEMORANDUM
                                                     & ORDER
           -against-                                 04-CV-2985 (SMG)

LIFE ENERGY & TECHNOLOGY HOLDINGS, INC.,
now known as GLOBAL ENVIRONMENTAL ENERGY
CORP. (BAHAMAS) and MILDRED ROSTOLDER
d/b/a NORTH AMERICAN TRANSFER COMPANY,

                              Defendants.
------------------------------------------------------------------------X
```
GOLD, S., *Magistrate Judge*:

## Introduction

Defendant Mildred Rostolder, doing business as North American Transfer Company ("Rostolder"), seeks to recover its attorneys' fees and costs in this action from Life Energy and Technology Holdings, Inc. ("LETH"). Rostolder seeks a total of $168,262.61 in legal fees and expenses. Docket Entry 63.

The plaintiffs in this action, an Irish corporation and several individual investors, allege that they are owners of stock certificates in Life Energy and Technology Holdings, Inc. ("LETH") and that defendants converted their LETH shares. The alleged acts of conversion occurred in 2001 and 2002 when Rostolder was LETH's stock transfer agent. The individual plaintiffs allege that they were promised shares of LETH in exchange for their investments, but never received the shares to which they were entitled. The corporate plaintiff alleges that LETH refused to issue a replacement certificate after its certificate was lost or stolen.

During the course of discovery in this case and in a related action brought against LETH,

*Rostolder v. Life Energy & Techn. Holdings, Inc.*, 03-CV-3375 (SMG), plaintiffs and Rostolder came to believe that LETH had reincorporated as Global Environmental Energy Corp. Bahamas ("GEEC Bahamas"). *See* Docket Entry 35. After conducting a hearing on the issue, I held that LETH was in fact succeeded by GEEC Bahamas and, as a result, granted Rostolder's motion for default judgment against GEEC Bahamas after GEEC Bahamas failed to appear in this litigation. Docket Entry 62.

### Discussion

Familiarity with my Memorandum and Order issued in the related action, 03-CV-3375 (SMG), Docket Entry 116 (the "prior order"), is presumed. For all of the reasons discussed therein, Rostolder's application for fees in this case is granted, but in an amount less than that sought, as discussed below.

A.  *Liability*

Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S. Ct. 1049 (1993); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). A court, however, retains the discretion to determine whether a final default judgment is appropriate. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Even after a defendant has defaulted, "[a party] must . . . establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." *U.S. v. Ponte*, 246 F. Supp. 2d 74, 76 (D. Me. 2003) (citation omitted). *See also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a

2

cause of action).

Rostolder has answered the complaint and filed a cross-claim against LETH, alleging that she was "entitled to indemnity from LETH for any liability arising from this proceeding, including reasonable attorney fees pursuant to the indemnity provision contained in the written contract between LETH and Rostolder wherein she was retained as LETH's stock transfer agent." Answer, Docket Entry 10, ¶ 67. Rostolder's indemnification claim arises from her retention as the stock transfer agent and registrar for a corporation known as Health-Pak, Inc. ("Health-Pak") in 1991. Rostolder Supp. Aff. ¶ 2.[1] The retainer agreement included an indemnification clause:

> The Corporation [Health-Pak] shall indemnify and hold harmless the Agent [Rostolder] for any act done or suffered by it in good faith in connection with the agency in reliance upon any instructions, order, stock certificate, assignment, affidavit, certificate or other instrument reasonably believed by it to be genuine and to bear the genuine signature of any person authorized to sign, countersign or execute the same.

Rostolder Supp. Aff. Ex. J, ¶ 7. On December 4, 2000, Health-Pak merged with and changed its name to Life Energy and Technology Holdings, Inc., or LETH. Rostolder Supp. Aff. ¶¶ 8-9 and Ex. K. Rostolder remained the stock transfer agent for the renamed corporation. Rostolder Supp. Aff. ¶ 10.

In addition to the general indemnification provision in the retainer agreement, LETH issued a letter dated July 30, 2001, in which it explicitly agreed to indemnify Rostolder for any claims or expenses arising from LETH's request that Rostolder cancel the LETH stock certificate

---

[1] "Rostolder Supp. Aff." refers to the Supplemental Affidavit of Mildred Rostolder in Support of Default Judgment, dated Feb. 3, 2007, Docket Entry 103.

of Agamede Limited. Rostolder Supp. Aff. ¶ 12 and Ex. L. Thus, the retainer agreement and July 30, 2001 letter establish LETH's liability for Rostolder's attorneys' fees.[2]

B.   Attorney's Fees

   1.   *Hourly Rates Charged by Rostolder's Counsel*

Rostolder seeks reimbursement at the following hourly rates: Snow, one of the partners in the firm, $450; Kurland, an attorney with 35 years of litigation experience and co-chair of the firm's litigation department, $425; Cuddy, an attorney with 25 years of litigation experience, $325; Lackowitz, an attorney, $225; and Emeric, a paralegal, $125. Cuddy Aff. ¶¶ 24-25.[3] For the same reasons stated in my prior order, the rates sought by Rostolder in this action are reduced as follows: Snow – $400, Kurland – $400, Cuddy – $300, Lackowitz – $150, and Emeric – $100.

   2.   *Time Expended*

As in the related case, Rostolder's application for fees in this case includes many examples of excessive billing. The same factors I noted in *Rostolder* suggest that the time Snow, Becker, Krauss expended on this litigation was somewhat excessive and unreasonable: 1) inefficiency, such as failing to utilize junior associates, especially when two senior attorneys duplicated each other's efforts, 2) block billing, 3) excessiveness, and 4) vagueness.

---

[2] Although Rostolder has not provided any documents indemnifying her specifically for the stock certificates of the individual investor plaintiffs, there is no reason to believe that she acted without instruction from LETH on those claims. Moreover, the time spent by her attorneys defending the suit brought by Agamede Limited was essentially the same time spent defending against the suit brought by the individual plaintiffs.

[3] "Cuddy Aff." refers to the Affidavit of Edward M. Cuddy III in Support of Default Judgment, dated Apr. 11, 2006, Docket Entry 63.

*a. Snow*

Although Snow billed only 3.1 hours on this case, his billing entries warrant a substantial reduction. On July 29, 2004, he billed 1.1 hours for "Litigation." This is a vague and meaningless description, particularly considering that plaintiffs' complaint had already been filed, and everything counsel did thereafter might reasonably be termed "litigation." In January of 2005, Snow billed two hours for reviewing the case with Kurland and participating in a telephone conference. Snow's billing, although de minimis, is excessive in light of his minimal participation in the case.

*b. Kurland*

Kurland's billing requires a substantial reduction. There are numerous instances of billing by Kurland for "review," "review[ing] file," or "review[ing] status," which seem unnecessarily excessive in light of the familiarity with the case he should have developed. *See*, *e.g.*, Billing Entries for Aug. 13 and 23, 2004, Feb. 3, 2005, Mar. 4, 2005, Apr. 6, 20, 25, and 29, 2005, May 12, 13, 19, and 20, 2005, June 22, 24, and 29, 2005, July 15, 2005, Aug. 5 and 15, 2005, Nov. 23 and 29, 2005, Dec. 22, 2005, and Feb. 24, 2006. Additionally, on October 26, 2005, Kurland billed half an hour for "email docket entry from Court EDNY - review - etc." The docket sheet reflects that the only email from the Court was a minute entry (composed of four sentences) describing a telephone conference in which Kurland had participated on the prior day. This is one example of excessive billing. There are also instances of vague billing entries. *See*, *e.g.*, Billing Entries for Sept. 24, 2004 (1.5 hours billed for "Re Answer: Review documents"), Feb. 1, 2005 (billed for "Review law"), Feb. 9, 2005 (billed for "Re discovery; Louisiana"), Mar. 8, 2005 (billed for "Re: discovery"), and Dec. 7, 2005 (same). As in the *Rostolder* case, Kurland

5

also billed for multiple tasks in one block of time, which makes it difficult to fully assess the reasonableness of the time expended. *See*, *e.g.*, Billing Entries for Feb. 7, 2005 (1.75 hours billed for "Prepare for Court on 2/8/05; tel cs. DeCandido, conf. Cuddy, etc."), Feb. 22, 2005 (1.75 hours billed for "Telephone calls Steinman, email; Telephone calls DeCandido; Conference with EMC re discovery demands"). Lastly, Kurland billed for travel time, which should be awarded at half of the usual rate. *See*, *e.g.*, Billing Entries for Aug. 26, 2004, Feb. 8, 2005, Mar. 2, 2005, May 26, 2005, Jan 25, 2006.

### c. Cuddy

Cuddy has several vague billing entries. For example, on August 16, 17 and 20, 2004, Cuddy billed a total of 7.5 hours for reviewing documents without any further explanation of what he was reviewing. Similarly, Cuddy billed for "Research" without specifying what he was researching. *See*, *e.g.*, Billing Entry for Apr. 11, 2005. There are also several examples of inefficiency, including billing by Cuddy for participating in the same conferences that Kurland attended, and on some occasions billing for travel to and from court. *See*, *e.g.*, Billing Entries for Feb. 8, 2005, May 26, 2005, Oct. 24, 2005, Nov. 7 and 10, 2005, and Feb. 17, 2006. In addition, Cuddy performed administrative work, such as obtaining a transcript and reviewing the file for a particular document, that a paralegal could have done at a significant savings. *See*, *e.g.*, Billing Entries for Aug. 19 and 30, 2005, Dec. 9, 2005, and Jan. 18, 2006. Lastly, as an example of excessiveness, on October 8, 2004, Cuddy billed for "Receipt and review of additional email from Court," but the only email from the court on or shortly before that date was a notification of the electronic filing of Rostolder's own answer. These examples of Cuddy's billing practices warrant a moderate reduction in time expended.

*d. Emeric*

The paralegal, Emeric, billed 2.1 hours in December of 2004 for updating the firm's computerized case management system to reflect court actions. However, the docket sheet reflects no activity during that month. *See* Billing Entries for Dec. 2 and 6, 2004. In addition, Emeric – like Kurland – billed for travel at full hourly rates, and this billing should be reduced as well. *See, e.g.*, Billing Entries for Oct. 4 and 5, 2004.

3.     *Court's Calculation*

For all these reasons, Rostolder's application for fees will be reduced by across-the-board percentages. *See* Prior Order at 15. The following individual's hours are reduced as follows: Snow by 30%, Kurland by 20%, Cuddy by 10%, and Emeric by 5%.

Applying these reductions, I calculate the lodestar as follows:

|  | Requested Hours | Reduction | Adjusted Hours | Adjusted Rates | Total |
|---|---|---|---|---|---|
| **CS** | 3.1 | 30% | 2.17 | 400 | $868 |
| **PCK** | 224.55 | 20% | 179.64 | 400 | $71,856 |
| **EMC** | 189.8 | 10% | 170.82 | 300 | $51,246 |
| **JAE** | 23.2 | 5% | 22.04 | 100 | $2,204 |
| **DAL** | 21.9 | -- | 21.9 | 150 | $3,285 |
|  |  |  |  |  | **$129,459** |

4.     *Costs*

Rostolder also seeks reimbursement for costs totaling $2,016.36. These costs include fees for long-distance phone service, faxes, postage, travel, court-tracking fees, ECF charges, and photocopying. These amounts appear to be reasonable and should be awarded. In January and February of 2005, however, the firm billed for two miscellaneous expenses totaling $38.91. These expenses appear to be restaurant charges. Rostolder has not cited any authority for

7

reimbursing attorneys for dining. Accordingly, I award $1,977.45 for costs, after subtracting $38.91 in miscellaneous expenses that have not been explained or justified.

## Conclusion

For the reasons stated above, the Clerk of the Court is directed to enter judgment in favor of Rostolder and against GEEC Bahamas in the total amount of $131,436.45.

**So Ordered.**

/s/
**Steven M. Gold**
**United States Magistrate Judge**

**Brooklyn, New York**
**April 9, 2007**